# In the United States Court of Federal Claims

No. 21-2121

(Filed under seal: December 9, 2021)
(Reissued: December 17, 2021)

| | | |
|---|---|---|
| **A.T. KEARNEY PUBLIC SECTOR AND DEFENSE SERVICES, LLC,** | ) ) ) ) | Post-award bid protest; motion for preliminary injunction; lack of showing of likelihood of success on merits |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| **UNITED STATES**, | ) ) | |
| Defendant, | ) ) | |
| **and** | ) ) | |
| **BCG FEDERAL CORP.**, | ) ) | |
| Defendant-Intervenor. | ) ) | |

Elizabeth N. Jochum, Blank Rome, LLP, Washington, D.C., for plaintiff.

Sheryl L. Floyd, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the United States. With her on the briefs were Brian M. Boynton, Acting Assistant Attorney General, Civil Division, and Patricia M. McCarthy, Director, and Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

Jennifer S. Zucker, Greenberg Traurig, LLP, Washington, D.C., for defendant-intervenor BCG Federal Corp. With her on the briefs were Michael J. Schaengold and Christopher M. O'Brien, Greenberg Traurig, LLP, Washington, D.C.

**OPINION AND ORDER[1]**

---

[1] Because of the protective order entered in this case, this opinion was initially filed under seal. The parties were requested to review the decision and provide proposed redactions of any confidential or proprietary information. The resulting redactions are shown by asterisks enclosed by brackets, *i.e.*, "[***]."

This post-award bid protest is before the court on plaintiff's motion for a preliminary injunction. *See* Pl.'s Mot. for Prelim. Inj. ("Pl.'s Mot."), ECF No. 2.[2] Plaintiff A.T. Kearney Public Sector and Defense Services, LLC ("Kearney") submitted a bid in response to Request for Proposals No. N0018921R0016 ("the solicitation") on April 14, 2021. AR 16-268.[3] The solicitation sought to award multiple firm-fixed price, indefinite delivery indefinite quantity contracts that would enable the Naval Supply Systems Command to address challenges in the Navy's supply chain. *See NAVSUP Strategic Transformation*, https://sam.gov/opp/e26 008017e3d4c0f9bb88dbdf7e27d85/view. Bids were to be evaluated under two factors: corporate experience and technical approach, which had three sub-factors. AR 41(a)-3873 to 3875. An award was to be made to any offeror who was deemed acceptable on all factors. AR 41(a)-3873.

Kearney was deemed unacceptable under the scenario solution sub-factor of factor II and was not selected for an award. AR 34-3551. It then filed this bid protest on November 1, 2021, alleging that the Naval Supply System Command's ("the agency" or "NAVSUP") evaluation of Kearney's proposal was arbitrary and capricious, that the agency used unstated evaluation criteria when evaluating plaintiff's proposal, and that the Navy engaged in disparate treatment. Compl. ¶¶ 33, 37, 39, ECF No. 1. BCG Federal Corp. ("BCG Federal") is an awardee under the challenged solicitation and intervened in the case on November 9, 2021. *See* Order of November 9, 2021, ECF No. 15.

In seeking preliminary injunctive relief, Kearney requests that the court enjoin "performance of the contracts awarded under the [solicitation], including issuance of task order solicitations, competitions under such task order solicitation[s], [and] award of task orders and performance thereunder" until the conclusion of this case. Pl.'s Mot. at 1. The government opposes this motion, arguing that the case does not merit injunctive relief and that the government would suffer "considerable" harm if an injunction is granted. Def.'s Resp. at 3, ECF No. 20. BCG Federal's arguments are materially identical. *See generally* Def.-Int.'s Resp., ECF No. 28.[4] The administrative record was filed on November 9, 2021, *see* ECF No. 19, and briefing has been completed, s*ee* Pl.'s Reply, ECF No. 26. The court held a hearing on November 23, 2021, and the motion is ready for disposition. For the reasons stated, plaintiff's motion for a preliminary injunction is DENIED.

---

[2] Plaintiff concurrently filed an application for a temporary restraining order, which the court denied at the initial status conference held on November 3, 2021. *See* Order of November 3, 2021, ECF No. 12. *See also* Hr'g Tr. 15:16-18 (November 3, 2021).

[3] The administrative record filed with the court in accord with Rule 52.1(a) of the Rules of the Court of Federal Claims ("RCFC") is divided into tabs and is consecutively paginated. The record will be cited by tab and page, *e.g.*, "AR ___-___."

[4] Due to the timing of BCG Federal's admittance as a party to the case, its response was allowed (with the consent of all parties) to be filed after Kearney's reply. *See* Order of November 18, 2021, ECF No. 25.

## FACTS[5]

### A.   *The Solicitation*

NAVSUP's role is to "manage[] supply chains that provide material for Navy aircraft, surface ships, submarines and their associated weapons systems," which includes "contracting for supplies and services."  AR 6-55.  To fulfill this purpose, NAVSUP issued the solicitation on March 9, 2019, seeking to "award . . . firm-fixed price multiple award [indefinite delivery, indefinite quantity] contracts for a 60-month ordering period [with] . . . an option to extend services for up to six months."  Def.'s Resp. at 6.  The maximum value of the overarching contract is $246,761,679.  AR 7-145.  The solicitation was to be evaluated consistent with the requirements of Federal Acquisition Regulation ("FAR") Part 12, Acquisition of Commercial Items and FAR Part 15, Contracting by Negotiation, as supplemented by the Defense Federal Acquisition Regulation Supplement, and the Navy Marine Corps Federal Acquisition Supplement.  AR 41(a)-3872.

The solicitation instructed offerors to submit their proposals based on two factors: "Corporate Experience" and "Technical Approach."  The technical approach factor had three subfactors: "Staffing Plan," "Scenario Solution," and "Small Business Participation Plan."  AR 41(a)-3873 to 3876.  The proposals were to be deemed either "Acceptable" or "Unacceptable" as to each factor and sub-factor, and an award was to be made to "all proposals with an 'Acceptable' rating for all factors and sub-factors."  AR 41(a)-3873.  A proposal was to be deemed acceptable for the scenario solution sub-factor when it "indicate[d] an exceptional approach and understanding of the requirements and contain[ed] multiple strengths in the [g]overnment's assessment combined to successfully present a highly advantageous solution."  AR 41(a)-3874.  A strength was defined as "[a]n aspect of an offeror's proposal that ha[d] merit or exceed[ed] specified performance or capability requirements in a way that w[ould] be advantageous to the [g]overnment during contract performance."  AR 41(a)-3874.  The scenario solution sub-factor was meant "to provide offerors the opportunity to demonstrate their knowledge and understanding of the requirement."  AR 41(a)-3938.  The solicitation described the scenario as follows:

> NAVSUP is constantly looking to reduce Average Customer Wait Time (ACWT) and Logistics Response Time (LRT) with a specific focus on optimizing forward positioning of material and reducing Last Tactical Mile (LTM) time segment to improve supply chain responsiveness in support of readiness objectives. NAVSUP is considering a holistic inventory positioning re-baseline approach that will incorporate the successes of current systems and private industry, while eliminating the shortcomings of those systems.

AR 41(a)-3938.  Offerors were told to include the following information, among other things, in their proposals: a "[d]escription of the steps to evaluate the scenario, determine the solution,

---

[5] The recitations that follow constitute findings of fact by the court drawn from the administrative record of the procurement filed pursuant to RCFC 52.1(a).  *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005) (explaining that bid protest proceedings "provide for trial on a paper record, allowing fact-finding by the trial court").

implement and then sustain the solution," and a "[d]escription of the technical solution, if applicable." AR 41(a)-3938. The solicitation also informed offerors that the proposals should be "tailored for Navy senior executives." AR 41(a)-3874. The proposal was also to be evaluated for "the [o]fferor's ability to demonstrate its strategy and the strategy's realism." AR 41(a)-3874.

### B.     Kearney's Proposal

In its proposal, Kearney outlined [***] areas that its plan would address to achieve the Navy's goals. Pl.'s Mot. at 7. The proposal offered that Kearney would work with NAVSUP "to co-develop recommendations that best fit the needs and requirements of the larger Navy system." AR 16-1015. It also planned to provide "a number of [commercial off the shelf] solutions, tailored capabilities, and programs already familiar to NAVSUP." AR 16-1015. Kearney stated that it planned to "work with NAVSUP to develop the best tool, to create a [***], and to transition [***] into an in-house capability." AR 16-1007. The proposal intended to consider the agency's ongoing initiatives and to adapt to the unique needs of NAVSUP. AR 16-1005, 1011. Particularly, Kearney proposed that NAVSUP should "[***] customer requirements, while minimizing net logistics time from the perspective of the deployed force." AR 16-1001. Kearney emphasized its familiarity with [***], "a modern, analytics-enabled demand management solution, that is used by [Naval Sea Systems Command] and NAVSUP." Pl.'s Mot. at 9; *see also* AR 16-1015.[6] Kearney further pointed to its experience with [***] engineered supply chain transformation. AR 16-293.

### C.     The Contract Awards and Debriefing

On July 30, 2021, the agency sent letters to seven unsuccessful offerors, including Kearney, conveying that they would not receive contract awards. Def.'s Resp. at 6. On August 2, 2021, contracts were awarded to BCG Federal, Grant Thornton Public Sector, LLC, and McKinsey & Co., LLC. *Id.* On the day it was notified of its unsuccessful proposal, Kearney requested a post-award debriefing pursuant to FAR § 15.506. AR 34-3544. The agency emailed the post-award debriefing to Kearney on August 4, 2021. AR 34-3544. Kearney's proposal was deemed acceptable under the corporate experience factor and the staffing plan sub-factor, but it was deemed unacceptable under the scenario-solution sub-factor. AR 34-3547. The agency concluded that "[t]he proposal contained no strengths, no weakness[es], no significant weaknesses, and no deficiencies." AR 34-3551. In support of its conclusion, the agency described Kearney's proposal as "a very generic process-based approach, . . . lacking specificity and showing limited knowledge of the Navy's unique challenges as outlined in the [s]cenario." AR 34-3551.

---

[6] [***] is a proprietary tool owned and implemented by Kearney. Hr'g Tr. 12:15-21 (November 23, 2021). Kearney states that [***] is already "used by NAVSUP [and other naval departments] to address [end-to-end] and demand management challenges across the maritime sustainment enterprise, including Naval Shipyards." Pl.'s Mot. at 10.

The date will be omitted from future citations to the transcript of the hearing held on November 23, 2021.

4

On August 6, 2021, Kearney submitted follow-up questions to the agency regarding its sub-factor II designation. AR 35-3552. In response to each question the agency maintained that the scenario solution in Kearney's proposal lacked strengths as defined in the solicitation, was not "acceptable" as defined in the solicitation, was not "solutions-oriented," was "very generic," and that the Navy had viewed the proposal as a whole and determined the proposal to be unacceptable. AR 35-3558 to 3568.

Subsequently, two of the other unsuccessful offerors, KPMG and Deloitte, challenged their non-awards by filing bid protests with the Government Accountability Office ("GAO"). KPMG filed its protest on August 17, 2021, and withdrew the same on September 22, 2021. AR 40-3608; AR 42-4199. Deloitte also filed a bid protest on August 17, 2021. AR 37-3572. The government filed a notice of corrective action regarding that protest, after which GAO dismissed the protest on September 17, 2021. AR 38-3605 to 39-3607. Upon reevaluating Deloitte's proposal, the agency awarded a contract to Deloitte on October 19, 2021. AR 44-4238 to 4239; Def.'s Resp. at 11.

Kearney took note of the agency's revised decision regarding Deloitte and filed this bid protest on November 1, 2021, challenging NAVSUP's determination that its proposal was unacceptable. *See generally* Compl.; *see also* Hr'g Tr. 7-17:21. Kearney claims that the agency's award decision was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with procurement law. Particularly, Kearney contends that the agency failed to identify the strengths of its proposal, that the agency applied unstated evaluation criteria, and that the agency engaged in disparate treatment of the offerors. Compl. ¶¶ 18, 30, 33. On the same day as filing its complaint, Kearney moved for a preliminary injunction. *See generally* Pl.'s Mot. It specifically requests that the court enjoin performance of task orders already issued under the solicitation and any future task orders while this case is pending. Pl.'s Mot. at 1.

After the court declined to issue a temporary restraining order at a hearing on November 3, 2021, the agency issued a task order to the four awardees under the contract that same day. Def.'s Resp. at 17; Order of November 3, 2021. An initial task order has two areas of engagement: the "Shipyard Material Management Consolidation aspect" to "identify and fix supply-chain holdups with respect to the Navy's shipyards and shipbuilding," and "the data analysis aspect" to "provide[] interim data analytics functions related to the Naval Sustainment System-Supply." Def.'s Resp. at 3.[7] This first task order is valued at $18.7 million of the allotted $246 million for the overarching contract. *Id.* at 34. Three of the four current awardees have submitted proposals for this task order. Hr'g Tr. 16:11-15. The government avers that it intends to issue the award under the task order on or by December 14, 2021. Hr'g Tr. 16:8-10. As previously noted, Kearney seeks an injunction against an award under this task order as well as any future task orders until the resolution of this case. Pl.'s Mot. at 1.

---

[7] BCG Federal currently has a bridge contract for the data analysis aspect of the contract. Hr'g Tr. 35:12-16. It expired on November 30, 2021. Def.'s Resp. at 3. The government stated a new bridge contract would be issued on December 1, 2021. Hr'g Tr. 16:4-10.

**STANDARD FOR DECISION**

In a bid protest, the court may award any relief that it considers proper, including injunctive relief. 28 U.S.C. § 1491(b)(2). When determining whether to grant a preliminary injunction, the court must consider: (1) whether the movant is likely to succeed on the merits; (2) whether the movant will suffer from irreparable harm if an injunction is not granted; (3) whether the balance of hardships to the parties tips in the movant's favor; and (4) whether the public interest favors injunctive relief. *See Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1259 (Fed. Cir. 2012) (citing *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)); *see also FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993). "Although the factors are not applied mechanically, a movant must establish the existence of both of the first two factors to be entitled to a preliminary injunction." *Altana Pharma AG v. Teva Pharms. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009) (citing *Amazon.com*, 239 F.3d at 1350). With that caveat regarding a preliminary injunction, "[n]o one factor, taken individually, is necessarily dispositive. . . . [T]he weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp.*, 3 F.3d at 427. A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis omitted) (citation omitted).

**ANALYSIS**

*A.  Likelihood of Success on the Merits*

To qualify for a preliminary injunction, Kearney must show that it is "more likely than not" to succeed on the merits of its claims. *See Revision Mil., Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 526 (Fed. Cir. 2012) (explaining that the standard in the context of a preliminary injunction is "more likely than not," rather than "clear and substantial likelihood," for matters unique to the Federal Circuit). On the merits, Kearney will need to show that the government's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). *See also* 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in [S]ection 706 of [T]itle 5.").

Here, Kearney argues that the agency "conducted [the procurement] in a manner [that was] arbitrary, capricious, an abuse of discretion, and/or otherwise contrary to law." Pl.'s Mot. at 21. Specifically, Kearney makes three claims: (1) that the agency failed to identify multiple strengths in its proposal, (2) that the agency applied unstated criteria in evaluating Kearney's proposal, and (3) that Kearney's proposal was evaluated differently than other submitted proposals. Kearney has not met its burden of showing a likelihood of success on the merits. An agency's procurement decisions are entitled to "highly deferential rational basis review," which requires "a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." *CHE Consulting, Inc. v. United States*, 552 F.3d 1351, 1354 (Fed. Cir. 2008) (internal quotations omitted) (quoting *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000)). The agency determined that Kearney's proposal "provide[d] little detail" and therefore did not demonstrate any strengths. AR 23-3434. While

Kearney points to the agency's current use of its [***], Kearney failed in the agency's reasonable determination to demonstrate how a system already in place would rectify the currently extant supply-chain problems. Further, many of the other allegedly overlooked strengths to which Kearney points, such as the [***] experience, would fall within the corporate experience factor, for which Kearney did receive an acceptable rating. AR 41(a)-3873; AR 34-3547.[8] Where there was a reasonable basis for this determination, the court should not displace the agency's decision with its own.

      Kearney's proposition that unstated criteria were applied similarly does not establish a likelihood of success on the merits. "[S]olicitation[s] need not identify each element to be considered by the agency during the course of the evaluation where such [an] element is intrinsic to the stated factors." *NEQ, LLC v. United States*, 88 Fed. Cl. 38, 48 (2009) (internal quotations and citation omitted). While Kearney objects to the idea that a solution-oriented approach was called for, the solicitation is littered with references to a solution and how the proposal should provide a detailed discussion of the proposed solution. *See* AR 41(a)-3938; 41(a)-3874 (stating that the proposal's "solution" would be evaluated). A solution is intrinsic to the scenario *solution* factor. Again, the court cannot second guess how the agency defines the scope of the criteria or whether the proposal satisfied those criteria in light of the deferential standard given to agency discretion in bid protests.

      Further, Kearney has not established a likelihood of success on the merits as to its disparate treatment argument. To prevail on a disparate evaluation claim, "a protestor must show that the agency unreasonably downgraded its proposal for deficiencies that were 'substantively indistinguishable' or nearly identical from those contained in other proposals." *Office Design Grp. v. United States*, 951 F.3d 1366, 1372 (Fed. Cir. 2020). A comparison of the Deloitte, McKinsey, and Kearney proposals reveals three unique proposals. *Compare* AR 18-1678 to 2823 *and* AR 21-3157 to 3389, *with* AR 16-268 to 1068. Although not completely devoid of overlap, both the Deloitte and McKinsey proposals present distinct solutions that provide a rational basis on which the agency could distinguish them from Kearney's proposal. It is evident that the proposals are not "substantively indistinguishable."

### B. *Irreparable Harm*

Kearney asserts that if it is not granted injunctive relief, it will suffer irreparable harm because it will be deprived of the opportunity to compete for the currently projected task order under the contract as well as future task orders solicitations. Pl.'s Mot. at 1. Beyond the monetary ramifications, Kearney suggests that it will be harmed by the lack of opportunity to compete for this initial task order because it will lose out on the experience of working with the agency and that "NAVSUP has historically issued follow-on, sole source contracts to offerors who performed competed predecessor requirements." Pl.'s Reply at 4. The agency contends that Kearney will suffer no harm if its motion for injunctive relief is denied; rather, it will only lose the opportunity to compete for the single task order that has been identified. Def.'s Resp. at 33. The agency and BCG Federal both suggest that any harm suffered by Kearney is of its own

---

[8] The corporate experience factor was to be evaluated based on the "recency, quality, and relevancy" of the offeror's "verified and validated corporate experience." AR 41(a)-3873.

making when it waited three months after the initial award to file its challenge to the award. *Id.* at 34-35; Def.-Int.'s Resp. at 12.

A movant must establish more than just a "possibility" of irreparable harm and instead must show that irreparable harm is "likely." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis omitted). Kearney has failed to meet this burden. The task order that has been identified is minimal in comparison to the ceiling value of the entire contract; the task order is valued at $18.7 million, less than ten percent of the entire contract value. Missing out on just the *possibility* to receive a small fraction of the overall award is not enough to constitute irreparable harm; the speculative nature of the harm is further supported by the fact that not all of the current awardees have submitted a proposal to compete for this task order. Hr'g Tr. 16:11-15. As to plaintiff's contention that it will be harmed because the awardee of this task order is likely to gain an advantage on future task orders, "a plaintiff may not show irreparable harm by claiming generically that the winner's transition into performance will give it advantages." *Lockheed Martin Corp. v. United States*, 124 Fed. Cl. 709, 729 (2016). This one missed opportunity does not rise to the level of irreparable harm to warrant injunctive relief and nothing bars plaintiff from seeking a permanent injunction at a later juncture.

### C. The Balance of Hardships & Public Interest

The agency contends that it will be considerably harmed if Kearney's request for injunctive relief is granted. Def.'s Resp. at 36. The agency avers that a portion of the new task order—the Naval Shipyard Material Management Consolidation aspect—is "one of the highest priorities within the [Department of Defense] and the Navy." Def.'s Resp. at 36. The agency indicates that the task order seeks to improve the naval shipyards' "effectiveness, efficiency, capability, and capacity," which is essential to maintaining national security. *Id.*; Hr'g Tr. 24:6-16. The agency maintains that "[c]ontractor support is considered crucial to achieving [full operational capability]" by next year. Def.'s Resp. at 37. The agency further avers that a bridge contract would not alleviate the harm that would be suffered because the Naval Shipyard Material Management Consolidation would not be an aspect of any bridge contract. *Id.* Kearney responds that the contract "is important, not that it is important *immediately*." Pl.'s Reply at 14. Any delay, however, would be detrimental to the agency's incremental program on improving naval shipyard effectiveness. The balance of hardships thus weighs in favor of the agency.

### D. Synopsis

Given Kearney's failure to show a likelihood of success on the merits, its motion for preliminary injunctive relief must be denied. Additionally, the balance of hardships weighs in favor of NAVSUP. The task order is targeted towards improving naval supply chains which in turn is meant to improve and preserve national security. The public interest is similarly served by ensuring naval preparedness. While Kearney suggests that the public interest is served by ensuring agencies follow procurement law, Kearney has pointed to no law the agency is alleged to have violated beyond Kearney's disagreement with the agency's evaluation of its proposal.

## CONCLUSION

For the reasons stated, Kearney's motion for a preliminary injunction is DENIED. The parties are requested to file a joint status report on or before December 30, 2021, addressing proposals for further proceedings in this case.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge
